UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 13 |
| | ) | |
| JEROME MAURICE DAVIS, | ) | Bankruptcy No. 11-81785 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| JEROME MAURICE DAVIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Adversary No. 14-96129 |
| CITIMORTGAGE, INC., | ) | |
| | ) | |
| Defendant. | ) | Judge Lynch |

## MEMORANDUM OPINION

The adversary complaint challenges CitiMortgage, Inc.'s assertion of a debt owed by the Debtor and a mortgage interest in the Debtor's residence. Those issues may have originally been strongly related to the Debtor's chapter 13 bankruptcy case when this adversary proceeding began. Since the case began, the house is no longer property of the estate, the debt—if valid—is not subject to discharge, the alleged debt and mortgage are not being treated under the Debtor's bankruptcy plan and that plan has now completed. The underlying bankruptcy case has closed and the complaint asserts no rights under bankruptcy law. Based on these unique circumstances, the court will grant CitiMortgage, Inc.'s request for this court to relinquish jurisdiction over this now purely two-party dispute and will thereby

leave the parties to pursue their respective rights in a forum with proper jurisdiction.

## 1. Procedural History.

This matter arises from a complicated series of events in the Debtor's bankruptcy proceeding, which are summarized below based on the court's docket. The Debtor filed his bankruptcy petition on April 20, 2011, initially filing under chapter 7. He voluntarily converted the case to chapter 13 on June 15, 2011. The Debtor's chapter 13 plan was confirmed on February 13, 2012, with an amended confirmation order entered two weeks later.

Before the plan was confirmed a dispute arose between the Debtor and CitiMortgage, Inc. regarding its claim of a debt secured by a first mortgage in his residence in Lakewood, Illinois. CitiMortgage, Inc. had filed a motion for stay relief and co-debtor stay relief for the Debtor's non-filing spouse on September 13, 2011. The Debtor responded by commencing an adversary proceeding against CitiMortgage, Inc. on October 6, 2011 (Case no. 11-96223[1]). In his complaint, the Debtor admitted that he had listed ABN Amro Mortgage Group, Inc. in his bankruptcy schedules as having a first mortgage in his residence of approximately $444,800. Alleging that CitiMortgage, Inc. had failed to show that it was the transferee of ABN Amro, the complaint asked the court to find that CitiMortgage, Inc. has no interest in the residence. CitiMortgage, Inc. filed a proof of claim on

---

[1] Although then represented by counsel in the bankruptcy, the Debtor filed the initial adversary himself. The Debtor was represented by counsel in the bankruptcy case between July 29, 2011 and May 14, 2012. The Debtor, a licensed Illinois attorney with at least some experience representing others in bankruptcy cases, has been proceeding without counsel at all times during this adversary proceeding.

October 10, 2011 to assert a claim of $478,238.90 as fully secured by the residence. With that it attached what purports to be a mortgage in the residence recorded in May 2005 in favor of ABN Amro Mortgage Group, Inc., together with a purported certificate of merger of ABN Amro Mortgage Group, Inc. into CitiMortgage, Inc.

**Agreed Order Conditioning the Stay.** The parties apparently came to an agreement to resolve their differences by early 2012 and the Debtor voluntarily dismissed his adversary proceeding on January. On the same day, the court entered an agreed order (the "Agreed Order") signed by counsel for the Debtor and for CitiMortgage, Inc., resolving the stay relief motion by conditioning the automatic stay. The Agreed Order conditioned the automatic stay on (i) cure of $23,402.24 in "post-petition arrears" through payment by the Debtor to CitiMortgage, Inc. of $15,000 within seven days after plan confirmation and annual payments of $2,100.56 for four years thereafter, (ii) timely payment to CitiMortgage, Inc. of "regular monthly post petition" mortgage payments, and (iii) cure of $78,640.90 in prepetition arrears through payment to CitiMortgage, Inc. of 3 annual payments of $20,000 beginning September 2012 and a payment of $18,640.90 in September 2015. The Agreed Order provided that if the Debtor defaulted on the terms of the order and failed to timely cure the default after notice, the automatic stay would lift to allow CitiMortgage, Inc. to foreclose on the residence, with CitiMortgage, Inc. to file a notice of modification with this court.

**The Revised Chapter 13 Plan and Modification of Stay.** The Debtor then filed a revised chapter 13 plan, incorporating the terms of the Agreed Order. The revised

plan stated that "[s]ecured creditor ABN Amro Mortgage Group/CitiMortgage, Inc." had "filed a proof of claim on October 10, 2011," and "[c]onsistent with the terms of the Agreed Order [entered in January 2012]" the Debtor would make the specified payments to "ABN Amro Mortgage Group/CitiMortgage, Inc." That plan was confirmed without objection on February 13, 2012. While the initial confirmation order contained language that property would continue to be property of the estate post-confirmation, that language was deliberately deleted in an amended order entered February 29, 2012. The amendment therefore restored the effect of 11 U.S.C. § 1327(b), vesting all property of the estate in the Debtor upon confirmation.

CitiMortgage, Inc. filed notice of failure to comply with the Agreed Order on May 13, 2014, and a notice of modification of the stay on May 29, 2014. In the notice of modification CitiMortgage, Inc. withdrew its proof of claim. Although the Debtor moved to either reinstate the automatic stay or contest the notice of default, the court denied the request, finding that he had failed to provide proof of compliance with the Agreed Order and that to the extent that the request sought to vacate the Agreed Order, such request was untimely. (Order, July 10, 2015, Case No. 11-81785, ECF No. 227.)

**The Pending Adversary.** In the meantime, the Debtor launched the pending adversary proceeding against CitiMortgage, Inc. on September 24, 2014. The Debtor's amended complaint challenges CitiMortgage, Inc.'s interest in his residence and the amount of debt owed or delinquent. Count I seeks to "determine the validity, extent, and priority of Citi's lien, claim, encumbrance, and interest in"

the Lakewood residence and to "determine if Citi has a valid lien, encumbrance or interest in" such property, "and whether it is a holder, non-holder, agent, pledgee, or successor entitled to foreclose on" the property. (ECF No. 6, ¶¶31-32.) Count II requests in the alternative a determination "whether the asserted default of $213,558.78 claimed by Citi is valid and whether Citi is seeking to recover amounts not permitted under the note, mortgage or applicable state law." (*Id.* at ¶34.) The complaint asserts no ground under the Bankruptcy Code to avoid or modify CitiMortgage, Inc.'s asserted lien or debt. For example, it does not seek to avoid the asserted lien as a preference or fraudulent transfer under the Bankruptcy Code's avoidance powers. Instead, the Debtor alleges in his complaint that CitiMortgage, Inc. was never properly assigned the original mortgage and promissory note from his original lender ABN Amro. (*Id.* at ¶12 ("There is no record of the note and mortgage executed by Plaintiff ever being assigned to Citi.")). Although the complaint references Section 362 of the Bankruptcy Code, it does not allege any specific violation of the automatic stay. Instead, the Debtor alleges that "Citi falsely represented that it was a mortgagee of Plaintiff's Property in order to induce Judge Barbosa to enter the Agreed Order Conditioning the Automatic Stay."[2]

**Completion of the Plan and Closure of Bankruptcy Case.** As discussed more fully in this court's opinion and order entered in the underlying bankruptcy case on June 21, 2016 (Case no. 11-81785, ECF No. 251), the bankruptcy case was incorrectly denoted as completing early in 2015 and then was reopened to complete

---

[2] The court has already rejected as untimely the Debtor's attack on the validity of the Agreed Order that his own counsel had signed. See Order, July 10, 2015, Case No. 11-81785, ECF No. 227.

properly. The chapter 13 trustee filed a notice of completion of plan payments on April 27, 2015. After the Debtor failed to file a certificate of completion of personal financial management course, the case closed without discharge on July 30. The trustee apparently understood the plan had ended prior to its original 60-month term based on payment in full of all allowed claims.

After giving the Debtor and CitiMortgage, Inc. the opportunity to brief the issue, the court determined that the plan had not completed, and the case had been closed in error. The court found that on the basis of CitiMortgage, Inc.'s withdrawal of its claim, the terms of the Agreed Order and statements of the Debtor and counsel for CitiMortgage, Inc. on the record,[3] withdrawal of the claim had rendered the claim a "nullity" and essentially removed the claim from the confirmed plan. (*Id.*) However, the court found that a certain student loan creditor with an allowed unsecured claim had not been paid in full and therefore under the terms of the plan, the plan could not complete before 60 months. (*Id.*) Accordingly, the case was reopened on June 21, 2016. On October 13, 2016, the court granted the Debtor's uncontested motion to modify his plan to provide for an additional 14 monthly payments of $386.41 to the student loan creditor. The chapter 13 trustee filed a notice of completion of plan payments on March 1, 2018, and the Debtor received his discharge on March 30, 2018. On April 12, 2018, the underlying bankruptcy case closed.

---

[3] The Debtor did not argue that CitiMortgage, Inc. was still entitled to payment under the plan after the notice of modification – a position that would have likely denied him a discharge. Nor did CitiMortgage, Inc. object to the Debtor receiving a discharge, seek dismissal of the case, or seek to enforce the Debtor's payment obligations to it under the plan.

Meanwhile, in this adversary proceeding, the court heard and denied without prejudice CitiMortgage, Inc.'s first motion to dismiss (ECF Nos. 25, 44), after which CitiMortgage, Inc. filed its answer to the amended complaint. The court heard and denied CitiMortgage, Inc.'s first motion for summary judgment on January 25, 2018 (ECF Nos. 137, 138). Discovery has been contentious, requiring the court to enter a number of discovery-related orders. Discovery is not yet complete. Indeed, despite the warnings and deadlines imposed by the court, the Debtor has not conducted any depositions, despite his stated intention to do so. As of yet, no evidentiary hearing has been conducted on the merits.

**The Pending Motion.** On November 20, 2018, CitiMortgage, Inc. filed a motion styled as a "Motion to Dismiss for Lack of Jurisdiction or, in the Alternative, Second Motion for Summary Judgment." (ECF No. 194.) After addressing several additional discovery related motions and requests, on March 14, 2019, the court bifurcated the request for dismissal, for which the court set a briefing schedule, from the motion for summary judgment. The court continued the summary judgment motion until after the scheduled close of discovery.

In its motion to dismiss CitiMortgage, Inc. initially argues that this adversary proceeding is "both moot and not ripe" and seeks what is "tantamount to an advisory opinion, which this Court lacks jurisdiction to issue" because CitiMortgage, Inc. "is not currently seeking to collect on the indebtedness in any forum." (ECF No. 194, ¶¶2-3.) In its supporting memorandum, CitiMortgage, Inc. states that it "dismissed the foreclosure proceedings against Davis in September

2011 (and has not restarted those proceedings) and withdrew its Claim in the Bankruptcy Case in May 2014." (ECF No. 192.) The brief further emphasizes that CitiMortgage, Inc. withdrew its claim in the bankruptcy case and the bankruptcy case closed in April 2018. (*Id.*) Arguing that the adversary "does not resolve any *live* case or controversy between the parties" because CitiMortgage, Inc. is not actively pursuing a claim against the Debtor or the property in bankruptcy or in the state or other courts, CitiMortgage, Inc. requests dismissal for lack of jurisdiction. (*Id.*) (emphasis in original). During the status hearing on March 7, 2019, however, counsel for CitiMortgage, Inc. clarified that her client was not permanently disclaiming or waiving any debt against the Debtor or interest in his residence. Nor was CitiMortgage, Inc. suggesting that it would make no attempt to foreclose or collect in the future. Rather, its attorney emphasized, CitiMortgage, Inc. was not currently attempting to collect the alleged debt.

In his initial response to the motion to dismiss, the Debtor argues that federal courts retain proper jurisdiction even if subsequent events eliminate the original basis for federal jurisdiction, citing the Seventh Circuit's opinion in *Chapman v. Curie Motors, Inc.* 65 F.3d 76, 81 (7th Cir. 1995). Based on this he asserts that bankruptcy courts have discretion to retain jurisdiction over a related case even after the underlying bankruptcy is dismissed. Second, the Debtor argues that the adversary complaint properly requests a declaratory judgment seeking to establish CitiMortgage, Inc.'s asserted rights in his property. The Debtor then cites this court's ruling denying CitiMortgage, Inc.'s first motion for summary judgment

(Mem. Op., Jan. 25, 2018, ECF No. 137), to argue that this court "has already determined it has jurisdiction to hear this adversary, even though the underlying bankruptcy case has closed." (ECF No. 231.)

In its reply, CitiMortgage, Inc. for the first time argues that the court had discretion to relinquish jurisdiction because the federal predicate for jurisdiction had 'fallen out' with CitiMortgage, Inc.'s withdrawal of its claim and the closure of the underlying bankruptcy case. (ECF No. 233.) In support of this argument CitiMortgage, Inc. principally relies upon *Chapman*. At the hearing on April 11, 2019, the court noted that this last argument was raised for the first time in the reply. But rather than strike the argument and separately proceed with a new motion, the court found it to be more efficient to permit the argument in the pending motion subject to the Debtor receiving the opportunity to fully respond. On April 22, 2019, the Debtor filed his response addressing the *Chapman* argument raised by CitiMortgage, Inc. (ECF No. 239.) The following week CitiMortgage, Inc. filed its sur-reply on this issue. (ECF No. 244.)

## 2. Discussion.

Federal district courts have original but not exclusive bankruptcy jurisdiction over "all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). A claim "arises under title 11" if it "depend[s] on a right created or determined by a statutory provision of title 11." *In re Repository Techs., Inc.*, 601 F.3d 710, 719 (7th Cir. 2010) (internal citation omitted). Claims "arising in" bankruptcy include "administrative matters, orders to turn over

property of the estate and determinations of the validity, extent, or priority of liens." *Id.* Such matters "arise in" bankruptcy "only if it has 'no existence outside of the bankruptcy.'" *Id.* (quoting *Stoe v. Flaherty*, 436 F.3d 209, 216 (3d Cir. 2006)). Bankruptcy courts may hear and determine all core proceedings arising under title 11, or arising in a case under title 11 referred to such courts, including:

> (A) matters concerning the administration of the estate;
> (B) allowance or disallowance of claims against the estate or exemptions from property of the estate ...
> (C) counterclaims by the estate against persons filing claims against the estate;
> ...
> (K) determinations of the validity, extent, or priority of liens;
> ... [and]
> (O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship....

28 U.S.C. § 157(b)(2). In accordance with section 157(a), the District Court for the Northern District of Illinois has referred all of its bankruptcy cases to the Bankruptcy Court for the Northern District of Illinois. N.D. Ill. Internal Operating Procedure 15(a).

CitiMortgage, Inc. argues that the adversary proceeding against it should be dismissed now that the bankruptcy case has completed and closed, particularly since CitiMortgage, Inc. had withdrawn its claim in the bankruptcy prior to completion. Completion of the bankruptcy case does not *automatically* divest this court of jurisdiction over the adversary. As explained by the Seventh Circuit, the "concept of 'related to' jurisdiction is sufficiently capacious to protect [the] interest in judicial economy, and Congress has expressed its intention that the dismissal of a

bankruptcy proceeding should not disrupt the relations between the debtor and his creditors." *Chapman v. Currie Motors, Inc.*, 65 F.3d 78, 81 (7th Cir. 1995). The relationship between an adversary proceeding based "exclusively on state law and the bankruptcy proceeding out of which it arises is functionally identical to that between a supplemental proceeding and the federal claim to which it is supplementary" and, therefore, "the same standards should apply to the question whether and in what circumstances to retain the supplemental (here, the adversary) claim when the main claim (here, the bankruptcy proceeding itself) is resolved." 65 F.3d at 81.

The power to retain jurisdiction can foster judicial economy and prevent gamesmanship. As noted by the court in *Chapman*, if subsequent events could eliminate federal jurisdiction, "a litigant who didn't like the way his case was going could, even on the eve of judgment, engineer its dismissal, allowing him to start over in a different court." 65 F.3d at 81. "Exactly the same danger would be created if the debtor in an adversary proceeding could bounce the proceeding out of federal court by procuring the dismissal of the underlying bankruptcy proceeding." *Id.* But at the same time, retention of jurisdiction is not mandatory. Like with supplemental jurisdiction under 28 U.S.C. § 1367(a), "the court should be, and it is, allowed to relinquish jurisdiction over the supplemental claim if the federal claim falls out of the case before judgment." *Id.* (citing *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1251 (7th Cir.1994)).

While *Chapman* involved dismissal of an unsuccessful bankruptcy case, other

events may diminish a bankruptcy court's jurisdiction as well. The Seventh Circuit has emphasized that the power of a federal court to decide an issue based on bankruptcy jurisdiction does not last forever, for "[o]therwise anyone who could trace his title to a bankruptcy could invoke federal jurisdiction to settle disputes affecting that property." *In re Xonics, Inc.*, 813 F.2d 127, 131 (7th Cir. 1987). *Xonics* involved a dispute over accounts receivable abandoned by the debtor under a confirmed chapter 11 plan. The Seventh Circuit further cautions that a bankruptcy court has limited power "to enjoin proceedings in other courts after the completion of the bankruptcy proceeding." *Zerand-Bernal Grp., Inc. v. Cox*, 23 F.3d 159, 160 (7th Cir. 1994). The court explained that "as a dispute becomes progressively more remote from the concerns of the body of federal law claimed to confer federal jurisdiction over it, the federal interest in furnishing the rule of decision for the dispute becomes progressively weaker." 23 F.3d at 162.

The Debtor correctly notes that in this court's January 25, 2018 opinion the court stated that while the Debtor was then "apparently very near completion of his Chapter 13 plan, completion of the plan will *not in and of itself* divest this court of jurisdiction." (ECF No. 137 at 3 n.1 (citing *Chapman v. Currie Motors, Inc.*, 65 F.3d 78, 81 (7th Cir. 1995) (emphasis added)). But, consistent with the holdings in *Chapman*, this court's opinion highlighted that it would not automatically lose jurisdiction upon completion of the plan or closure of the case, not that it was inappropriate to relinquish jurisdiction under the standard set forth in *Chapman*. No request had been made at that time for the court to do so, nor was that issue

before the court at that time.[4] Nor had the plan actually completed at that time and there was still no guarantee at the time that it would be completed successfully and the Debtor receive his discharge.

Now that the request has been made and after reviewing the record, the court concludes that relinquishing its jurisdiction over the adversary proceeding is appropriate under the present circumstances. *Chapman* points to the standard for supplemental jurisdiction as an appropriate benchmark for determining whether to relinquish jurisdiction over an adversary proceeding after completion of a bankruptcy case. 28 U.S.C. § 1367(c) authorizes district courts to decline to exercise supplemental jurisdiction over a claim if:

> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).

Here Debtor's complaint raises only state law issues and deals mainly with contested rights in Illinois real estate. The court has no other pending claims in the bankruptcy proceeding, which has now closed. The property at issue vested in the Debtor upon confirmation of the plan and is thus not property of the estate. The

---

[4] The court has on numerous occasions expressed some doubt about its continuing jurisdiction over this matter, and yet the issue was not properly before the court until now. For example, elsewhere in the same opinion that the Debtor cites, the court wondered whether given the prior lifting of the automatic stay permissive abstention under 28 U.S.C. § 1334(c)(1) might be appropriate, but ultimately noted that neither party had asked the court to abstain nor presented sufficient information about existing or potential state court actions to enable the court to make a determination on the issue. (ECF No. 137, 5.)

plan did not rely on the property for funding the plan. Now that the plan is complete there is no future need for funding which could affect other prepetition creditors. As explained in this court's June 21, 2016 opinion in the underlying bankruptcy, the dispute between CitiMortgage, Inc. and the Debtor does not implicate his discharge. (Case No. 11-81785, ECF No. 251.) To the extent that CitiMortgage, Inc.'s claim was treated by the plan, such claim is non-dischargeable as a cured long-term debt. 11 U.S.C. § 1328(a)(1). To the extent that the withdrawal of CitiMortgage, Inc.'s claim caused its claim to not be "provided for by the plan," then on that account it is not subject to the discharge. 11 U.S.C. § 1328(a). Either way, the Debtor's discharge is not implicated. Because the dispute does not now affect other pre-petition creditors, the plan, or any of the Debtor's rights under bankruptcy law, this matter is a two-party dispute under state law which does not implicate bankruptcy rights. Therefore, like in *In re Dye*, the "bankruptcy proceeding having ended, the adversary proceeding became a dispute of no interest to anyone except the two adversaries, and their dispute revolved entirely around a state-court proceeding." 448 Fed. Appx. 625, 629 (7th Cir. 2011) (affirming dismissal of adversary proceeding after dismissal of chapter 13 case) (internal citation omitted).

Nor would judicial economy be particularly served by keeping the matter in the bankruptcy court. While the parties have spent considerable time on discovery before this court, that process is not complete. Nor has the court held an evidentiary hearing on the merits, and the parties have offered no reason to believe

that the discovery already completed in this court would not be of use in another court with jurisdiction to hear and decide the parties' issues. Additionally, this court is unable to fully adjudicate this dispute between the parties. The court has already determined that the matter is at most a non-core "related to" matter, meaning that the court would only have authority to issue proposed findings of fact and conclusions of law to the district court. *See* Mem. Op., Jan. 25, 2018, ECF No. 137. *See also Townsquare Media, Inc. v. Brill*, 652 F.3d 767, 772 (7th Cir. 2011) (suggesting that bankruptcy courts exercising only supplemental jurisdiction have no constitutional authority to issue final orders (citing *Stern v. Marshall*, 564 U.S. 462 (2011)). Indeed, the Debtor has expressly stated that he does not consent to this court entering final orders over this matter. (Pl.'s Notice Regarding Jurisdiction, ECF No. 131.) While CitiMortgage, Inc. has consented to final judgment by this court (CitiMortgage, Inc.'s Notice Regarding Final Adjudication and Consent, ECF No. 131), if it succeeds in defending the case the bank will still presumably need to return to a state court to enforce its mortgage interest. It is clear that judicial economy would not be well served by retaining jurisdiction.

The Debtor spends much of his latest response reminding the court that it has the discretion to retain jurisdiction over this adversary proceeding. As noted above, in its exercise of that discretion this court concludes that it is appropriate not to retain jurisdiction under the present circumstances. The Debtor also accuses CitiMortgage, Inc. of gamesmanship by seeking to destroy jurisdiction by voluntarily withdrawing its foreclosure action and then by withdrawing its claim in

the bankruptcy. But the record is clear that both events occurred *before the Debtor filed* his adversary complaint. Indeed, the adversary complaint appears to have been filed in response to CitiMortgage, Inc. filing its notice of modification of automatic stay.

The Debtor's response also suggests that Mr. Davis intends to "strip Defendant's lien" in this action, citing *Palomar v. First Am. Bank*, 722 F.3d 992 993-94 (7th Cir. 2013). Yet his amended complaint makes no reference to lien stripping and alleges no factual or legal basis to do so. Nor does the Debtor explain how bankruptcy law would give him the right to strip off CitiMortgage, Inc.'s lien (assuming the lien is valid under state law). The *Palomar* court *affirmed* the lower court's dismissal of an action to strip a lien as meritless. That case involved Chapter 7 debtors seeking to strip a lien based on lack of equity under 11 U.S.C. § 506, and the court found the argument to be contrary to Supreme Court precedent. 722 F.3d at 994 (citing *Dewsnup v. Timm*, 502 U.S. 410 (1992)). While the court noted that liens can be stripped through a chapter 13 plan through the power to modify the rights of holders of secured claims under 11 U.S.C.§ 1322(b)(2), 722 F.3d at 995, the Debtor did not seek to strip CitiMortgage, Inc.'s lien through his confirmed plan. Because the plan has now completed, he can no longer seek to do so. *See* 11 U.S.C. § 1329(a) (plan may be modified only "before the completion of payments under such plan"). The Supreme Court has held that because of the restrictive language in Section 1322(b)(2), a chapter 13 debtor may not use a plan to strip down a first mortgage secured only by real property that is the debtor's

principal residence. *Nobelman v. Am. Sav. Bank*, 508 U.S. 324 (1993).

Finally, the Debtor suggests that the "adversary could result in Citi having to pay damages and disgorging that money" which he could then use to pay towards a student loan excepted from discharge and not paid in full through the plan. (ECF No. 239.) He does not explain this theory, nor how any such claim can be prosecuted under bankruptcy law rather than state law. But more importantly, his amended complaint asserts no such claim. Instead, it seeks only declaratory judgments as to the validity, extent and priority of CitiMortgage, Inc.'s asserted lien in his residence and the extent and validity of CitiMortgage, Inc.'s asserted default, not money damages. Nor would a recovery of damages have any effect on other pre-petition creditors, his bankruptcy plan now being complete. The Debtor's response confusingly suggests that the adversary proceeding might somehow affect Citibank, FSB, whose second mortgage in his residence was stripped through a judgment this court entered on December 21, 2011 in a separate adversary proceeding filed by the Debtor (Case No. 11-96234, ECF No. 5), and under the terms of the confirmed and completed plan. The Debtor asserts that the pending "adversary will determine whether Citibank, FSB's lien was secured and subject to the anti-modification clause in Section 1322(b)(2)." (ECF No. 239.) Yet he does not explain how his adversary proceeding that does not name or mention Citibank, FSB can modify a judgment this court previously entered against that entity—and modify the confirmation of a plan which binds that entity. Nor does he explain how he has standing to assert the rights of Citibank, FSB, particularly in a way he himself

opposed in the proceedings he brought against the creditor more than six years ago.

## CONCLUSION

For these reasons, the court will grant the motion to dismiss and dismiss the adversary complaint without prejudice. Because the court relinquishes jurisdiction on that basis, it need not address CitiMortgage, Inc.'s alternate argument that the complaint is either moot or not ripe. The adversary proceeding being dismissed, the pending second motion for summary judgment will be stricken. Separate orders will be entered concurrently to effectuate the rulings made herein.

DATE: May 10, 2019

ENTER: *[signature]*

Thomas M. Lynch
United States Bankruptcy Judge